ST. JAMES COMPANY, Respondent, *v.* THE SECURITY TRUST AND LIFE INSURANCE COMPANY, Appellant.

*Loan by one corporation to another — proof that the money loaned had been advanced by two stockholders of each corporation and as to their relations is incompetent — rule as to who is the real party in interest — proof as to express authority to borrow money where the power is claimed to rest upon implication from official relations to a corporation.*

In an action brought by the St. James Company against the Security Trust and Life Insurance Company to recover moneys alleged to have been loaned by the former company to the latter company, it appeared that, at a time when the defendant company did not have funds with which to pay the taxes assessed upon a building owned by it, it was notified that unless such taxes were paid a mortgage covering the building would be foreclosed; that one James N. Stout, who was the treasurer of the plaintiff corporation and vice-president of the defendant corporation, drew, as treasurer of the plaintiff corporation, checks upon its bank account to the order of the receiver of taxes and the department of water supply for the amount of the taxes.

*Held,* that evidence that the moneys deposited in the bank account of the plaintiff corporation, with which the taxes were paid, had been advanced by Stout and one Price, who were stockholders of both companies, and as to the relations existing between Stout and Price, was incompetent, irrelevant and immaterial;

That the only effect of such evidence would be to show that the plaintiff was not the real party in interest, and that this fact would not constitute a defense to the action, because payment of the judgment to the plaintiff corporation would protect the defendant against all claims by a third party;

That, as Stout did not claim any express authority to borrow money to pay the taxes upon the defendant company's building, but claimed an implied authority to do so by virtue of his position as vice-president of the company and by

virtue of a resolution passed by the directors of the defendant company giving him the charge and management of the building in question, it was not error to exclude evidence as to whether or not he had specific authority to borrow the money.

INGRAHAM and HATCH, JJ., dissented.

APPEAL by the defendant, The Security Trust and Life Insurance Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 22d day of August, 1902, upon the report of a referee.

The action was brought to recover $42,749.10, alleged to have been loaned by the plaintiff to the defendant on or about July 11, 1900, and by consent a reference was ordered.

Proof was given upon the trial to show that this sum was paid out by the plaintiff's treasurer and used in the payment of taxes upon the St. James Building, which was owned by the defendant. At the time of the transaction, Mr. James N. Stout was the vice-president of the defendant company, and was also treasurer of the plaintiff, the St. James Company, and by checks of the St. James Company, which he signed as treasurer to the order of the receiver of taxes and the department of water supply, he paid the taxes upon the building. Such payment was made by Mr. Stout after written notice was received by him as vice-president of the defendant on July 7, 1900, from the Bond and Mortgage Guarantee Company which had guaranteed the first mortgage on the building to the Mutual Life Insurance Company, that said insurance company insisted that the taxes due should be paid or the mortgage would be foreclosed, and that if the taxes were not at once paid and receipted bills shown, the Bond and Mortgage Guarantee Company would be compelled to place the matter in the hands of its attorney to commence foreclosure proceedings. When this notice was received, the defendant was without funds, and in order to meet the demand and pay the taxes, it was necessary for it to obtain money, which was done in the manner stated.

One of the defenses was that the money so obtained and paid was not the money of the plaintiff, but belonged in fact to Mr. Stout and Mr. Bruce Price, who were stockholders of both companies. Evidence was given to show that the moneys which finally paid the taxes were advanced by Mr. Stout and Mr. Price, and deposited in

the treasury of the plaintiff company, and were for the most part obtained by them from Mrs. Price.   The defendant attempted to go further into the relations between Mr. Price and Mr. Stout, and when prevented from so doing took exception to the rulings of the referee.   It appears, however, that prior to the commencement of this action, Mr. Stout and Mr. Price had adjusted their affairs with each other and exchanged releases.

Another separate defense was that Mr. Stout, as vice-president of the defendant, had no power or authority to borrow money for its account and thereby charge it with liability.   It was not denied that he was at the time the defendant's vice-president as well as the treasurer of the plaintiff company; and it was shown that the defendant had given him charge of the St. James Building. Evidence as to specific authority to borrow the money with which the taxes were paid was excluded and exception taken.

The referee found in favor of the plaintiff for the amount demanded in the complaint, and from the judgment so entered upon his report the defendant appeals.

*Jacob Halstead,* for the appellant.

*L. Laflin Kellogg,* for the respondent.

O'BRIEN, J.:

The plaintiff company having shown that the defendant through its vice-president had received at his instance from the plaintiff moneys from its treasury which were actually used for the payment of the taxes due on defendant's building, had sustained the burden resting upon it and the referee was justified in his conclusion in its favor.   The contention is made, however, that the judgment should be reversed for errors committed to the prejudice of the defendant in rulings upon evidence.

The defendant sought to prove that Mr. Price and Mr. Stout, the latter being principal owner of the plaintiff company, and both being large stockholders in the defendant company, were desirous of preventing the foreclosure of the mortgage held by the Mutual Life Insurance Company upon the St. James Hotel property which was the largest and principal asset of the defendant company, and that on their own account and for their own benefit and gratuitously

and without any reference to whether they were or were not to receive repayment, they undertook to discharge the obligation which rested upon the defendant company of paying the taxes which were due on the St. James Hotel property. To that end it was sought to examine into the transactions between Mr. Stout and Mr. Price as to the accounts between them, and as to what they said and did at or about the time that the $42,000 was borrowed from Mrs. Price by Mr. Stout, and by him placed in the treasury of the plaintiff company.

With respect to all this class of evidence it seems to us that it was entirely incompetent, immaterial and irrelevant, because this action was not for an accounting between Mr. Stout and Mr. Price, but was an action at law between the plaintiff corporation and the defendant corporation to recover moneys lent. If an accounting between Mr. Stout and Mr. Price could have any material bearing on the issues presented, it was herein made to appear by uncontradicted evidence that all their differences with respect to stock and borrowed money were adjusted and settled prior to the trial before the referee, and upon that basis Mr. Stout was released from any and all claims which Mr. Price might have had against him growing out of their relations as officers, stockholders or persons otherwise interested in either of the two corporations. In any aspect, therefore, whether the taxes were as the result of an agreement paid out of the moneys which belonged to Mr. Price and Mr. Stout jointly before they were placed in the defendant's treasury, had no relevancy to the issue as to whether or not the plaintiff loaned to the defendant. It could make no difference nor was it any concern of the defendant whose moneys were deposited in the bank account of the plaintiff. It was conceded that the payment of the taxes was an obligation which rested on the defendant. It was also shown that it was the plaintiff's check which paid the taxes and, so far as it was necessary to show that the money had actually gone into the plaintiff's treasury and from what source it was received, this clearly appeared from the cross-examination of Stout.

The most that could be claimed of such evidence is that it might have had a tendency to prove as matter of defense that the plaintiff was not the real party in interest. If it had been proved, however, that originally the money borrowed from Mrs. Price had been so

borrowed by both Mr. Price and Mr. Stout, it was conclusively shown that it went into the plaintiff's treasury, which thus got the legal title to the money, and that thereafter the taxes were paid with the plaintiff's check.   When we recall that there is no suggestion that the money was stolen by Mr. Stout or came wrongfully into his possession, and that neither Mr. Stout nor Mr. Price nor anybody is here asserting any claim to the money as against the plaintiff, and the further fact proved without dispute that the transaction was one between the plaintiff and the defendant by which moneys to which concededly the plaintiff had legal title were borrowed to pay the debt of the defendant, it becomes evident that the defense sought to be proved would not, if established, be available, because payment of the judgment to the plaintiff will fully protect the defendant against claims by third parties.   This, under the authorities, is the test as to whether or not the plaintiff is the real party in interest.   (*Sheridan* v. *Mayor*, 68 N. Y. 30; *City Bank of New Haven* v. *Perkins*, 29 id. 554; *Gage* v. *Kendall*, 15 Wend. 640.)

It was further contended that it was erroneous to exclude evidence upon the question of whether or not Mr. Stout, as vice-president of the defendant, had power or authority to borrow the money. If the claim had been made that he had special authority and that was a crucial point in the case, such evidence would be relevant. Mr. Stout, however, did not claim express authority, but insisted that as an officer of the company and pursuant to the resolution which gave him charge and management of the St. James property, he had implied authority to do all things necessary, including the borrowing of money to pay taxes so as to avoid foreclosure and save and protect the property for the benefit of the defendant.   Whether he had such power did not depend upon any specific authority to negotiate the loan, but turned upon whether, by virtue of his position as vice-president of the company and manager of this particular property under the resolution which gave him general powers in connection therewith, he was authorized and justified for the benefit of the defendant in making the payment so as to bind it.   The exclusion of the evidence, therefore, bearing upon the question of specific authority, we think, was proper.

The other points of the appellant we have examined, but find no reason therein presented calling for a reversal.

Our conclusion, therefore, is that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., and McLAUGHLIN, J., concurred; INGRAHAM and HATCH, JJ., dissented.

INGRAHAM, J. (dissenting):

I think this case was tried upon a wrong theory; that competent and material evidence was excluded, and for that reason there should be a new trial.   The allegation of the complaint is that "on or about the 11th day of July, 1900, this plaintiff loaned to the defendant at its special instance and request the sum of forty-two thousand seven hundred and forty-nine and 10 / 100 dollars ($42,749.10), which sum the defendant agreed to pay upon demand to the plaintiff, with interest at six per cent;" and it is for this sum that the plaintiff has recovered judgment.   This allegation the defendant denies, and alleges as a separate defense that at the time mentioned in the complaint one James N. Stout was vice-president of the plaintiff corporation and also vice-president and owner of a number of shares of stock of the defendant corporation; that certain taxes for the year 1899 on the St. James Building, the property of the defendant, were paid by Bruce Price and the said James N. Stout with money belonging to them; that the money paid by the check of the St. James Company to the receiver of taxes on or about the 11th day of June, 1900, for the taxes for the year 1899 on the said St. James Building, amounting to the sum of $42,749.10, was money belonging to the said James N. Stout and said Bruce Price, and not the property of the said St. James Company.

It was entirely upon the evidence of James N. Stout that a loan by the plaintiff to the defendant was sought to be established.   He testified that at the time of the transaction in question he was the vice-president of the plaintiff and also of the defendant; that Stout and Price were the owners of all the stock of the plaintiff corporation; and owned a large proportion of the stock of the defendant corporation; that the plaintiff had erected a building, called the St. James Building, upon Broadway, in the city of New York, and subsequently had conveyed it to the defendant corporation by a deed dated February 28, 1899, and recorded March 24, 1899; that the taxes upon this property for the year 1899 were not paid by the

defendant, and in June, 1900, a mortgagee who had a mortgage upon the building wrote a letter to the defendant stating that the taxes must be paid or the mortgage would be foreclosed. Without consulting any other officer or director of either the plaintiff or the defendant corporations, he deposited over $42,000 in the bank to the credit of the plaintiff corporation, and then drew a check of the plaintiff corporation to the order of the receiver of taxes and paid the taxes on the building belonging to the defendant; and this is the transaction upon which he predicates a loan by the plaintiff to the defendant. Upon the trial he produced a receipt which is as follows:

"N. Y., July 11th, 1900. Received of the St. James' Company its check of even date on Second National Bank of N. Y. City to the order of 'Receiver of Taxes' for the sum of Forty-one thousand one hundred eighty-seven ($41,187.60) dollars 60/100 same to be used to pay the taxes overdue on the St. James' Bldg. Bway & 26th St., and the amount returned to the St. James' Company on demand with 6% interest.

"THE SECURITY TRUST & LIFE INS. CO.

"James N. Stout,

"V. P."

So far as appears, no one except Stout knew of this receipt until the trial, when he produced it and introduced it in evidence. The transaction was entirely managed and controlled by Stout in his capacity as vice-president of both corporations. He claims no special authority on behalf of the defendant to borrow this money; and although the company had a president who was the principal executive officer of the corporation, and a board of directors who were responsible for the management of its affairs, the transaction was carefully concealed from all of its directors, officers and employees no entry being made in any of its books showing either the receipt or the payment of the money. The money never went into the defendant's bank account, or appeared in any way as a transaction of the defendant corporation. Stout swears that it was his money, and states in a general way that he was indebted to the plaintiff in a large amount and paid the money to the plaintiff on account of that indebtedness, but the foundation of such an indebtedness was not at

all explained.    Whether the defendant corporation was indebted to him at the time does not clearly appear.    It does appear, however, that all of the money that Stout deposited in the bank to the credit of the plaintiff, from which this check to the receiver of taxes was paid, was drawn by Stout from the defendant, and that Price and his wife had furnished Stout with large sums of money which were used for their joint account.    In support of the defense that this money which had been placed by Stout to the credit of the plaintiff corporation, and by it paid to the receiver of taxes, was not in fact the money of the plaintiff, but was money contributed by Stout and Price or Mrs. Price for the purpose of paying these taxes, the defendant sought to prove the relation that existed between Stout and Price; where, as a fact, this money came from, that subsequent to the payment of these taxes Price and Stout had a settlement in which there was included the money that Stout had used to pay these taxes, from which it was claimed that it would appear that the money used to pay the taxes was furnished by Stout and Price, or Mrs. Price, and was charged up against Price in the settlement between Price and Stout; so that as a matter of fact, under the arrangement between them, Stout and Price or Mrs. Price had furnished this money that had paid the taxes, and it never became the property of the plaintiff, and there was no obligation existing in favor of the plaintiff against the defendant.    It also appeared that Stout had made to an intended purchaser of a large block of stock of the defendant company from the company itself, a statement that there was no indebtedness of the defendant company, and statements to others which were entirely inconsistent with his testimony that by this transaction there was created an indebtedness of the defendant corporation.

Considering the circumstances under which this alleged loan was created, the fact that the money that paid these taxes was deposited in the bank to the credit of the plaintiff upon the day the payment to the receiver of taxes was made by Stout without any authority from any of the officers of either the defendant or the plaintiff, and the fact that Stout acted for both parties in furnishing the money to the plaintiff, in drawing the money from plaintiff's bank, and in paying it for the benefit of the defendant to the receiver of taxes, neither of the parties was absolutely bound by the apparent condi-

tion that Stout had created which would estop the defendant from showing · the true facts in relation to the · transaction ; and if it appeared that this money never was the money of the plaintiff, that it never was intended to be loaned to the defendant, but was money contributed by Stout and Price, and under an agreement between them used for the purpose of paying these taxes, the mere fact that Stout without authority from any one caused the transaction to take such a form as would create the appearance of an indebtedness would not make the defendant liable to the plaintiff.

It was proved that subsequent to the payment of these taxes Stout and Price had a dispute in relation to their accounts and the management of the defendant corporation ; that Stout had been removed as an officer and director of the defendant corporation ; that he then had a settlement with Price, in which their accounts were settled ; that Price had conveyed to Stout his interest in the stock of the plaintiff corporation ; and it was after this transaction, for the first time, that Stout presented this claim against the defendant corporation and insisted on its payment. There was also evidence tending to show that at the time this payment was made, the plaintiff corporation had substantially gone out of business and had no assets ; and Price testified that he conveyed his stock to Stout upon the statement of Stout that the company had no assets and that its stock was of no value.

Now, in endeavoring to prove that the plaintiff never had the money except as a mere matter of convenience in paying the taxes ; that the money was never the money of the plaintiff corporation, but was in effect money that had been contributed by Stout and Price or Mrs. Price for their joint enterprise and for the benefit of the defendant ; and that the payment of this money had been settled for on the accounting between Price and Stout, facts which if true would, as I view it, have been a defense to the action to recover as for a loan of money, the learned referee, upon the objection of the defendant, excluded most material and important evidence, as he seemed to have thought that as long as the money had been actually in the bank account of the plaintiff, and a check of the plaintiff used to pay these taxes, all evidence as to the source from which the money had been received by the plaintiff was entirely immaterial and the defendant was liable. Stout had testified,

in answer to a question as to where he got the money that was deposited in the bank to the credit of the St. James Company : " I had a current account with the Security Trust and Life Insurance Company between the 28th day of June, 1900, and the 11th day of July, 1900. I drew from the Security Trust and Life Insurance Company the sum of $42,000. I didn't deposit that money in the St. James Company. I put it in my bank. Q. Did you draw it from your bank to the order of the St. James Company ? A. I drew checks from my bank ;" that the St. James Company did not have to its credit on the 1st day of July, 1900, $2,000 ; that it may have had $1,000. He also testified that between the 28th day of June, and the 11th day of July, 1900, he drew from the defendant the sum of $42,000, and that he paid that identical sum over to the plaintiff. There was also introduced in evidence a letter from Stout to Mrs. Price, which is as follows :

"I have waited a few days before answering your letter of last Thursday, hoping to be able to give you some definite information regarding your money. The best that I can say now is that $20,000 of it is safe ; had it not been for the fact that we paid last year's taxes, the remaining $40,000.00 would be reasonably secure. As it stands now, that is in jeopardy, but it is by no means lost to us. *   *   * "

If the payment of these taxes had jeopardized Mrs. Price's money, that payment could not have been made with the money of the plaintiff. Stout was then asked, " You testified yesterday that you purchased Mr. Price's stock in the St. James Company ; is that correct ?" to which he answered, " Substantially so." He was then asked when he purchased it, which was objected to, and the objection sustained. He further testified that in the latter part of February, 1901, Mr. Price and he had an accounting which involved the affairs of the St. James Company. Counsel for the defendant then stated : " I propose to show that Mr. Price and Mr. Stout in their accounting of the affairs, involving all of the affairs of the St. James Company, and during that accounting Mr. Stout submitted to Mr. Price the accounts of the company's affairs and the affairs of the company were closed up, and any assets or liabilities of that company as of that time — " when the referee interposed, " I don't think it is competent ;" to which the defendant excepted. He was

then asked other questions as to his accounting with Price in relation to the affairs of the St. James Company, and was asked, " In your accounting with Mr. Price, did you charge the item of the taxes paid on the St. James Building for the year 1899 amounting to $42,749.10, one-half to you and one-half to Mr. Price ?" " Did you, in the latter part of the month of February or during the month of March, 1901, have an accounting with Mr. Price in reference to the moneys which you and Mr. Price had borrowed from Mrs. Price ?" " Did Mr. Price pay one-half of the taxes for the year '99 for the Security Trust and Life Insurance Company ? Was he charged with one-half ?" " Did he pay it to you, Mr Stout, in the year 1901 — at any time ?" These questions were objected to, the objection sustained. He was then asked : " Mr. Stout, the money that you paid in the St. James Company, was it your own personal money ?" That was objected to, the objection sustained, and defendant excepted.

Mr. Pattison, who was the president of the defendant, was called and testified that he never heard of this loan ; that Stout did not at any time call his attention to the fact of the loan ; that he was at the office of the defendant during the time of this transaction ; that Stout had several times stated that there were no liabilities of the defendant company, and that the witness was in New York on the ninth day of July and presided at a meeting of the directors on that day, and was in New York every week. Mr. Price was then called as a witness and was asked questions which tended to show that this money used to pay these taxes was money contributed by himself and his wife and Mr. Stout for that purpose, but his testimony was all objected to by the plaintiff and excluded by the referee. He was asked whether he knew who it was that paid the taxes on the St. James Building for the year 1899, which was objected to and the objection sustained. He was also asked whether he had an accounting with Mr. Stout in the month of February or March, 1901, which was objected to and the objection sustained. He was asked whether he had a conversation with Mr. Stout in reference to the payment of the taxes at the time of their payment, and what Stout said before the payment, which was objected to and the objection sustained. He was then asked if the taxes for the year 1899 on the St. James Building were paid by the St. James

Company, which was objected to and the objection sustained.   He was asked if he knew whether the St. James Company in that year had any money, or had any assets in the month of February or March, 1901, which was objected to and the objection sustained. He was then asked : " Mr. Price, do you know of advances made to the Security Trust and Life Insurance Company by Mr. Stout as set forth in the account of James N. Stout in the records of the Security Trust and Life Insurance Company ?" to which he answered, " Yes." He was then asked : " Mr. Stout has testified in this proceeding that the money was his money — personal funds — do you know whether or not that statement is correct ?" That was objected to and the objection sustained.   He was then asked : " Do you know what money, or who the money belonged to that was advanced into that account credited by James N. Stout in that account ?" That was objected to and the objection sustained.   He was then asked as to the accounting between himself and Stout; and a copy of a statement of the accounts was produced, and the defendant sought to show that in that accounting, which was an accounting of the joint transaction between Price and Stout in relation to the affairs of the defendant and plaintiff corporations, the item of the payment of taxes on this building for the year 1899 was charged and was paid out of the moneys belonging to the witness and Stout jointly.   This was all objected to and the objection sustained, and these rulings were all excepted to by the defendant.

All the evidence offered by the defendant to prove the actual facts as to the ownership of the money that Stout deposited in the name of the plaintiff, and then as an officer of the plaintiff loaned to the defendant, he acting as an officer of the defendant in making the loan, and that such money had been advanced by Price and Mrs. Price to Stout for the purpose of their joint undertaking and was with the consent of all three used to pay these taxes, was excluded.

If Stout, acting for himself and the others interested in the defendant corporation, had applied money which had been contributed by those interested in the corporation to be used for its benefit or for their joint adventure in relation to it, and had applied such money with the consent of those contributing it to relieve this defendant of the obligation to pay these taxes, and subsequently, on

an accounting between himself and the others interested, had charged them with their proportion of those taxes and had received from them credit as a payment on account of this money thus contributed, it would tend to prove that the money that had been used to pay these taxes was not the money of the plaintiff corporation, and his effort so to treat the money which he held for this specific purpose, and which had been by this accounting repaid to him, could not be used as a basis of a liability to the plaintiff. An examination of this record will show that these defendants never had a chance to prove the facts in relation to this transaction, and to sustain the defense set up in the answer which, if proved, would defeat the plaintiff's claim. They were not allowed to cross-examine the substantial plaintiff who owned all the stock of the plaintiff corporation, and who is thus seeking for his own benefit to recover this money; and the testimony to prove that he held it in a fiduciary capacity and paid it under the direction of those who were entitled to it for the benefit of the defendant corporation was all excluded. The defendants were entitled to prove the facts to sustain their defense, and it was error to exclude this testimony.

I think the judgment should be reversed.

HATCH, J., concurred.

Judgment affirmed, with costs.